Roger BEATY, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2001–SC–0890–MR.

Supreme Court of Kentucky.

Oct. 23, 2003.

Rehearing Denied Feb. 19, 2004.

A.B. Chandler, III, Attorney General, State Capitol, Samuel J. Floyd, Jr., Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Roger Beaty, was convicted by a Logan Circuit Court jury of five counts related to the possession, trafficking, or manufacturing of illegal drugs and drug paraphernalia and one count of operating a vehicle under the influence of alcohol or an impairing substance (DUI). All sentences imposed for those convictions were ordered to run concurrently for a total of twenty years imprisonment. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), contending that: (1) the trial court improperly allowed a prosecution witness to testify despite the untimely production of the witness's statement in violation of RCr 7.26; (2) there was insufficient evidence to convict him of "knowingly" manufacturing methamphetamine; (3) the jury instruction as to manufacturing methamphetamine failed to require proof of *scienter*; (4) the trial court failed to allow him to present his defense that the crime was committed by another person; (5) the constitutional guarantee against double jeopardy was violated by his dual convictions of manufacturing methamphetamine and possession of a controlled substance in the first degree; and (6) the trial court failed to properly address the jury's error in returning verdicts sentencing him for both a first and second offense of possession of drug paraphernalia.

Euva D. Hess, Assistant Public Advocate, Appellate Division, Department of Public Advocacy, Frankfort, Counsel for Appellant.

## I. FACTS.

On November 8, 2000, Logan County Deputy Sheriff Jimmy Phelps observed a white Chevrolet erratically weaving from

side to side on the highway. Upon stopping and approaching the vehicle, Phelps detected a strong odor of anhydrous ammonia. Appellant was the driver of the Chevrolet; his girlfriend, Marion Ann Hanks, was in the front passenger seat. Phelps asked Appellant to exit the vehicle, and as he did so, Phelps observed that he was unsteady on his feet. Appellant failed the field sobriety tests and was arrested and charged with DUI. KRS 189A.010(1). Because the breath test was negative, Phelps concluded that Appellant was under the influence of a substance other than alcohol. Appellant refused to submit to a blood or urine test at a local hospital.

A search incident to the arrest revealed substantial evidence of illegal drug activity. In a bag concealed in the area of his groin, Appellant possessed three small bags of marijuana, a bag of cocaine, a set of scales, and other assorted drug paraphernalia. When Hanks was asked to exit the vehicle by another officer, she attempted to hide under the vehicle a bag containing marijuana and rolling papers. Officers found marijuana seeds in the front seat, open containers of beer and gin, and, in the glove compartment, a prescription pill bottle containing crack cocaine and bearing the name "Kenneth Huskey," who, as explained *infra*, was the boyfriend of the vehicle's owner.

The back seat and trunk of the vehicle contained a methamphetamine laboratory. A search of the back seat revealed several garbage bags and a duffel bag containing a piece of burnt aluminum foil bearing methamphetamine residue, several thousand Sudafed tablets, starter fluid, ether fuel, drain cleaner, iodized salt, brass fittings, tubing, pipe wrenches, hoses, duct tape, vice grips, bolt cutters, and glass jars. The trunk contained three propane tanks (one containing anhydrous ammonia) and a gallon jar containing a liquid white residue later found to be methamphetamine. Phelps testified that upon examining the jar and the equipment, he determined that Appellant "was actually in the process of cooking while driving down the road."

The vehicle was owned by Hanks's friend, Pamela Kuhl. Appellant and Hanks testified that they had borrowed the car merely to do laundry and were ignorant of the contents of the back seat and trunk. Hanks claimed that the car was always messy and that she had not noticed the equipment in the back seat. Kuhl, and Kuhl's boyfriend, Kenneth ("Spook") Huskey, testified that the car was empty when they loaned it to Hanks in the early afternoon of November 8, 2000.

Appellant was indicted on nine counts: driving erratically in violation of KRS 189.300 (Count I); DUI in violation of KRS 189A.010(1)(c) (Count II); trafficking in marijuana (less than eight ounces) in violation of KRS 218A.1421(2)(b) (Count III); manufacturing methamphetamine in violation of KRS 218A. 1432(1)(a) (Count IV); possession of a controlled substance in the first degree in violation of KRS 218A. 1415 (Count V); possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine in violation of KRS 250.489 and KRS 250.991(2) (Count VI); possession of drug paraphernalia, second offense, in violation of KRS 218A.500(2) (Count VII); violating the open container laws, KRS 189.530(2) (Count VIII); and being a persistent felony offender in the second degree (Count IX).[1] Counts I, VIII, and IX were eventually dismissed. A Logan Circuit Court jury convicted Appellant on all remaining counts (including possession of marijuana, a lesser included offense under Count III, which was subsequently dis-

1. Appellant was also charged but never indicted for possession of cocaine.

missed pursuant to KRS 505.020) and recommended that his sentences run concurrently for a total of twenty years. The trial court entered a judgment in accordance with the verdicts and sentenced Appellant to a total of twenty years in prison. We affirm Appellant's convictions and sentences for DUI, trafficking in marijuana, and possession of drug paraphernalia, second offense, but reverse and remand for a new trial Appellant's convictions of manufacturing methamphetamine, possession of a controlled substance in the first degree, and possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine.

## II. DELAYED DISCOVERY.

Appellant first complains that Kenneth Huskey was allowed to testify despite a discovery violation. On November 15, 2000, Huskey, gave the following statement to the police:

> Marion Ann and Roger came by my girlfriend's house and ask [sic] to borrow the car to go wash close [sic]. He took me to the store about 3:00—3:30, took me back to my girlfreind's [sic] house and left. [T]here was nothing in the backseat [sic] of the car when [I] was in there. Not to my knowledge was anything in the trunk!!

The Commonwealth concedes that RCr 7.26(1) required the prosecutor to furnish Huskey's statement to Appellant no later than forty-eight hours prior to trial and that the Commonwealth did not produce the statement until the day before trial. Appellant made a motion *in limine* to preclude Huskey from testifying because of this discovery violation. The trial court overruled the motion and explained in an order denying a motion for a new trial that

Appellant had failed to allege that the late submission prejudiced him or that he would have "done anything differently" if the statement had been provided in a timely manner.

 We find no abuse of discretion. "[E]ven if the forty-eight hour rule is violated, automatic reversal is not required. Some prejudice must be found, or the error, if any, is harmless." *Gosser v. Commonwealth*, Ky., 31 S.W.3d 897, 905 (2000), *citing McRay v. Commonwealth*, Ky.App., 675 S.W.2d 397, 400 (1984). *See also Roach v. Commonwealth*, Ky., 507 S.W.2d 154, 155 (1974); *Hicks v. Commonwealth*, Ky.App., 805 S.W.2d 144, 149 (1990). Here, the error was harmless.

Appellant claims he was prejudiced by *Huskey's testimony*, but in so arguing he commits a kind of category mistake.[2] The relevant inquiry, instead, is whether Appellant was prejudiced by the *Commonwealth's tardiness*. Appellant does not claim that receiving the statement on time (one day earlier than he did receive it) would have impacted his defense. Appellant did not request a continuance, does not claim that Huskey's statement was exculpatory, *compare Mounce v. Commonwealth*, Ky., 795 S.W.2d 375, 378 (1990), and does not claim that he was surprised. While Appellant now suggests that he would have liked to have questioned Huskey about a pending indictment against Huskey, the statement contained no information relevant to that issue. Thus, the violation of the rule in this case did not result in prejudice.

## III. SUFFICIENCY OF THE EVIDENCE.

Appellant next contends that the trial court erred by failing to direct a verdict on

2. *See* Gilbert Ryle, *The Concept of Mind* 16 (Chicago 1949) (explaining that a foreigner would commit a "category mistake" if, after touring Oxford University and being shown the colleges, libraries, playing fields, museums, scientific departments, and administrative offices, he asked, "But where is the University?").

the charges of manufacturing methamphetamine and possessing anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine. Both charges contain a requirement that the conduct be undertaken "knowingly." KRS 218A. 1432; KRS 250.489(1); KRS 250.991(2). In arguing that the evidence of *scienter* was insufficient, Appellant maintains, as he did at trial, that he was completely ignorant of the fact that there was a methamphetamine laboratory in the vehicle.

■ "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991). As Appellant admits, direct evidence of his awareness of the laboratory was not required to support his conviction. *Love v. Commonwealth*, Ky., 55 S.W.3d 816, 825 (2001). Knowledge may be inferred from circumstantial evidence. *Id.; McRay, supra,* at 399.

■ There was overwhelming evidence from which to infer Appellant's knowledge of the methamphetamine laboratory. First, Appellant was driving the vehicle. *Leavell v. Commonwealth*, Ky., 737 S.W.2d 695, 697 (1987) ("The person who owns or exercises dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband."). Second, Huskey and Kuhl testified that the vehicle was empty when they loaned it to Appellant in direct contravention of Appellant's and Hanks's testimony. Third, Deputy Phelps testified to a strong odor of ammonia emanating from the trunk. Even if Appellant was, as he claims, unable to recognize the odor of cooking methamphetamine, the jury was entitled to assume that Appellant knew that automobiles do not emit the odor of ammonia when operating in a normal fashion. Thus, this jury

could have inferred that, if innocent, Appellant would have investigated the strange odor and thereby discovered the laboratory. Fourth, Appellant had marijuana, cocaine, and assorted drug paraphernalia hidden inside his trousers, which cast at least some doubt on his protest that he was unaware of the presence of additional controlled substances in the vehicle. Finally, as the trial court noted in overruling the motion for directed verdict, why would an individual (such as Kuhl) who was operating a methamphetamine laboratory in her vehicle, loan that vehicle to an innocent person who might discover the laboratory and report it to the police? (More on this query, *infra.*)

Thus, there was sufficient evidence to submit the *scienter* issue to the jury. *See Burnett v. Commonwealth*, Ky., 31 S.W.3d 878, 880 (2000) (finding sufficient evidence to convict when crack cocaine was found in seat of vehicle where defendant had been sitting and owner of car disavowed possession); *Young v. Commonwealth*, Ky., 25 S.W.3d 66, 70 (2000) (affirming when methamphetamine found in defendant's trailer despite defendant's protest that he was not living in trailer); *Leavell, supra,* at 697 (affirming when defendant held ignition key to vehicle with marijuana in its trunk, even though key would not open trunk).

■ We decline Appellant's invitation to require "something more" than the evidence presented here. Appellant cites several cases from other jurisdictions reversing because of insufficient evidence of knowledge. However, all of those cases in which a defendant, like Appellant, had control over the location where the drugs were found involved a "secret compartment." *See Cerda v. State*, 303 Ark. 241, 795 S.W.2d 358, 359 (1990) (cocaine hidden in car bumper); *People v. Ortiz*, 196 Ill.2d 236, 256 Ill.Dec. 530, 752 N.E.2d 410, 424–29 (2001) (cocaine in trailer's secret com-

partment); *State v. Perkins,* 996 S.W.2d 753, 757 (Mo.Ct.App.1999) (methamphetamine hidden in bathroom light fixture in motel room). The United States Court of Appeals for the Fifth Circuit has made it clear that cases dealing with hidden compartments present an exception to the general rule.

> Ordinarily, knowledge of the existence of drugs may be inferred from control over the location in which they are found. When the drugs are secreted in a hidden compartment, however, we require additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.

*United States v. Moreno,* 185 F.3d 465, 471 (5th Cir.1999) (quotation omitted). Here, the methamphetamine laboratory was located in the back seat and trunk of the vehicle and drew attention to itself through a strong odor. No secret compartment was involved.

## IV. JURY INSTRUCTION.

Appellant next complains that the jury instruction under which he was convicted of manufacturing methamphetamine was defective because it did not require a finding of one of the culpable mental states required by KRS 501.030(2). That statute provides:

> A person is not guilty of a criminal offense unless:
>
> . . .
>
> (2) He has engaged in such conduct intentionally, knowingly, wantonly or recklessly as the law may require, with respect to each element of the offense . . . .

■ KRS 218A.1432(1) requires a culpable mental state of "knowingly" as an element of the offense. Thus, Appellant is correct that the omission of this element from the instruction was erroneous. However, Appellant did not object to the instruction given nor did he move for or tender an alternative instruction. Thus, the issue is not preserved for review. RCr 9.54(2); *Commonwealth v. Duke,* Ky., 750 S.W.2d 432, 433 (1988). Since the conviction must be reversed on other grounds, we need not engage in palpable error analysis. RCr 10.26.

## V. EXCLUSION OF ALTERNATIVE PERPETRATOR EVIDENCE.

Appellant contends that he was denied his Due Process right to present a defense to the methamphetamine-related offenses by exclusion of evidence that Pamela Kuhl, the owner of the vehicle, had a motive to commit the offenses. His theory was that Kuhl believed that Hanks and Huskey were secret paramours and, after discovering the affair, Kuhl contrived to loan Hanks the mobile methamphetamine laboratory in order to incriminate Hanks and eliminate her as a rival for Huskey's affections. Kuhl normally loaned her car to Hanks to drive her daughter to school, so Kuhl would have assumed that Hanks would be the driver on November 8, 2000. However, the scheme went awry. Appellant ended up as the driver, and though the trap was set for Hanks, it ensnared Appellant instead.

The Commonwealth called Kuhl as a rebuttal witness, and Appellant attempted to develop this theory on cross-examination. Specifically, Appellant attempted to elicit testimony from Kuhl about her alleged jealousy of Hanks and to introduce a document written by Kuhl illustrating her belief that Huskey and Hanks had engaged in sexual relations. The trial court sustained the Commonwealth's objection to the admission of this evidence. It was, however, preserved by avowal. KRE 103(a)(2).

In response to Appellant's avowal questioning, Kuhl confirmed that she had been jealous of Hanks and had composed a document memorializing her jealousy:

Q: Can you just describe what that [document] is and what it says? I mean, essentially it has to do with whether or not something's going on between Marion Ann and Spook [Huskey]?

A: Right, yeah.

Q: And you had some concerns about that.

A: Yeah, at one point I did, yes.

Q: And so you were kind of jealous of Marion Ann?

A: I was probably jealous of what they had done in the past, yeah.

Q: And you had some concerns about what was going on in the present as well?

A: Well, yeah, it crossed my mind.

Q: This is your writing and you did write this.

A: Yeah, it's mine.

The document was a piece of cardboard containing scrawled questions apparently addressed to Appellant and Hanks:

1. Why did you (Rodger) [sic] ask Spook if he was f—ing Marion Ann?

2. Did you know (Rodger) [sic] I can't keep my eyes off you.

3. Marion Ann—did you know Bergetta told Spook if we stay friends you'll break us up? You did it to her.

4. Marion Ann—Deserry said to Spook that he f—ed you twice. And Spook believes him.

5. Marion Ann—Did you know the only reason you came back to the bedroom last night was to f—with Spook so we'd get in a fight. Did you also know I was standing in the hallway listening. We planned it.

6. Marion Ann + Roger Dale—Why are you two trying to break us up. Spook said that's your guys plan all along. Why?

7. Marion Ann—Are you planning to drop me as a friend when you get what you want from me, like you did to Bergetta.

8. Why did you tell Roger Dale you never f—ed Spook?

On the back of the cardboard tablet, Kuhl offered further thoughts:

Did you know I sent you back to catch Spook looking you [sic]. We were trying to set him up. And you were swinging your open [sic] in the living room shown [sic] your p—sy to him.

Kuhl also wrote, "Kuhl [Loves] Huskey and [Huskey] [Loves] Kuhl. So just step back!!!"

Kuhl protested on avowal rebuttal that she had resolved her concerns with Hanks and was not angry with her on November 8, 2000. Kuhl also alleged that she was friends with Appellant but did not know him very well.

Appellant contends that the document and cross-examination, both evincing Kuhl's jealousy, should have been admitted for two reasons. First, he contends that the evidence was admissible to impeach Kuhl's *credibility* by showing bias and that exclusion of the evidence for that purpose violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution. Second, he claims that the evidence was admissible *substantively* as probative of his defense theory that it was Kuhl, not Appellant, who placed the methamphetamine laboratory and materials in the car. According to Appellant, the trial court's exclusion of the evidence for that purpose violated the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Consti-

tution and Section Eleven of the Kentucky Constitution.

### A. Confrontation.

 We first address the issue of whether the evidence was admissible for *impeachment* purposes because that was the reason for the trial court's exclusion, and in that regard, the trial court was correct. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court confirmed that the Sixth Amendment right to confront witnesses includes the right to conduct reasonable cross-examination. *Id.* at 316, 94 S.Ct. at 1110; *see also Weaver v. Commonwealth*, Ky., 955 S.W.2d 722, 726 (1997); *Commonwealth v. Maddox*, Ky., 955 S.W.2d 718, 721 (1997). However, the trial court retains "broad discretion to regulate cross-examination." *Maddox, supra,* at 721 (quotation omitted). "The right to confrontation guarantees an opportunity for effective cross-examination but not cross-examination in whatever way and to whatever extent the defense might wish." *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835, 842–43 (1990). The trial court here correctly noted that the Confrontation Clause is only implicated if the excluded cross-examination concerns a matter giving the witness reason to testify falsely during the trial at hand, *e.g.*, when the witness bears some animus toward, or is biased against, the defendant. *See Caudill v. Commonwealth*, Ky., 777 S.W.2d 924, 925 (1989) (witness had divorce pending against defendant); *Barrett v. Commonwealth*, Ky., 608 S.W.2d 374, .376 (1980) (history of hostility between witness's family and defendant's family and friends).

 However, as Appellant concedes, there was no evidence that Kuhl's jealousy created bias against *him*. Indeed, Kuhl testified that she never had strong feelings of any kind towards Appellant. Bias alone is not sufficient to implicate the Sixth Amendment. *Cf. United States v. Rahman*, 189 F.3d 88, 132 (2d Cir.1999) (trial court did not violate Confrontation Clause by excluding evidence of witness's bias against third parties). Thus, Kuhl's jealousy of Hanks was not relevant to her credibility as a witness against Appellant.

### B. Due Process.

 "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). This right, often termed the "right to present a defense," is firmly ingrained in Kentucky jurisprudence, *e.g., Rogers v. Commonwealth*, Ky., 86 S.W.3d 29, 39–40 (2002); *Holloman v. Commonwealth*, Ky., 37 S.W.3d 764, 767 (2001); *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 489 (1999); *McGregor v. Hines*, Ky., 995 S.W.2d 384, 388 (1999); *Barnett v. Commonwealth*, Ky., 828 S.W.2d 361, 363 (1992), and has been recognized repeatedly by the United States Supreme Court. *See United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998); *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991); *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky*, 476 U.S. 683, 690–91, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636 (1986); *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979); *Washington v. Texas*, 388 U.S. 14, 22–23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967). An exclusion of evidence will almost invariably be declared unconstitutional when it "significantly undermine[s] fundamental elements of the defendant's

defense." *Scheffer, supra,* at 315, 118 S.Ct. at 1267–68.

 Appellant's only defense to the methamphetamine-related charges was that Kuhl was the perpetrator. Likewise, in *Chambers* and *Washington, supra,* the unconstitutionally excluded evidence was probative of the defendant's theory that a third person was the actual perpetrator of the charged offense. 410 U.S. at 289, 93 S.Ct. at 1043; 388 U.S. at 16–17, 87 S.Ct. at 1921–22. For the same reasons expressed in *Chambers* and *Washington,* we have been adamant that a defendant "has the right to introduce evidence that another person committed the offense with which he is charged." *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694, 705 (1994); *see Harvey v. Commonwealth,* 266 Ky. 789, 100 S.W.2d 829, 830 (1937) ("It has been uniformly held by this court that one accused of a crime may introduce evidence tending to prove that the crime was committed by another, subject, however, to the right of the commonwealth to rebut such evidence."); *Kelly v. Commonwealth,* 259 Ky. 770, 83 S.W.2d 489, 490 (1935); *cf. McGregor, supra,* at 388 ("It is crucial to a defendant's fundamental right to due process that he be allowed to develop and present any exculpatory evidence in his own defense, and we reject any alternative

that would imperil that right."). A trial court may only infringe upon this right when the defense theory is "unsupported," "speculat[ive]," and "far-fetched" and could thereby confuse or mislead the jury. *Maddox, supra,* at 721.

Federal courts have also specifically recognized the importance of the defendant's right to produce evidence that a third party (or "aaltperp," *i.e.,* "alleged alternative perpetrator"[3]), actually committed the crime. *E.g., United States v. Crosby,* 75 F.3d 1343, 1347 (9th Cir.1996) ("fundamental standards of relevancy require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged") (quotation omitted); *United States v. Blum,* 62 F.3d 63, 68 (2d Cir.1995); (reversing when trial court prevented defendant from introducing evidence that third party committed crime); *United States v. Stevens,* 935 F.2d 1380, 1384 (3d Cir.1991) (reversing when trial court prevented defendant from introducing "reverse 404(b)" evidence[4] that third party had perpetrated another crime so similar in *modus operandi* to the crime with which defendant was charged as to identify third party as perpetrator); *Pettijohn v. Hall,* 599 F.2d 476, 480 (1st Cir.1979) ("Evidence that someone other than the defendant was

---

**3.** This term was coined by Professor David McCord in his article, *"But Perry Mason Made It Look So Easy!": The Admissibility of Evidence Offered By a Criminal Defendant To Suggest That Someone Else Is Guilty,* 63 Tenn. L.Rev. 917, 920 (1996). Other useful law review articles on this subject include Ellen Yankiver Suni, *Who Stole the Cookie From The Cookie Jar?: The Law and Ethics of Shifting Blame in Criminal Cases,* 68 Fordham L.Rev. 1643 (2000) (outlining the ethical guidelines governing the assertion of the defense and arguing that "aaltperp" evidence should be excluded only if the trial court can make a finding that with the admission of the evidence, an "irrational acquittal" is "substantially more likely than a rational acquittal"),

and Stephen Michael Everhart, *Putting a Burden of Production on the Defendant Before Admitting Evidence that Someone Else Committed the Crime Charged: Is it Constitutional?,* 76 Neb. L.Rev. 272 (1997) (arguing that imposition of additional burden on defendant by some jurisdictions before admitting "aaltperp" evidence is unconstitutional).

**4.** Rule 404(b) evidence is generally offered by the government to prove the defendant's guilt. "Reverse 404(b) evidence" is evidence of an "aaltperp's" other crimes, wrongs, or acts offered by the defendant to prove that the "aaltperp" committed the offense with which the defendant is charged. *Id.* at 1401–06.

identified as the criminal is not only probative but critical to the issue of the defendant's guilt.").

However, evidence is not automatically admissible simply because it tends to show that someone else committed the offense. *Maddox, supra,* at 721. For example, evidence of motive alone is insufficient to guarantee admissibility. *State v. Cerreta,* 260 Conn. 251, 796 A.2d 1176, 1183 (2002) ("It is not enough to show that another had the motive to commit the crime . . . .") (quotation omitted). In a homicide case, a defendant is not entitled to parade before the jury every person who bore some dislike for the victim without showing that the "aaltperps" at least had an opportunity to commit the murder. *See State v. Makerson,* 52 N.C.App. 149, 277 S.E.2d 869, 871–72 (1981) (affirming when defendant's only evidence was that "aaltperp" bore murder victim ill will); *Romano v. State,* 847 P.2d 368, 381–82 (Okla.Crim.App.1993) (affirming when defendant's only evidence was that three others had motives to kill murder victim), *aff'd* 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

In the same way, evidence of opportunity alone is insufficient to guarantee admissibility. *E.g., Karvonen v. State,* 205 Ga.App. 852, 424 S.E.2d 47, 49 (1992) (affirming child sexual abuse conviction when excluded evidence merely showed babysitter had opportunity to commit abuse). Simply showing that the "aaltperp" was at the scene of the crime, without also showing some connection between the "aaltperp" and the crime, will generally not be allowed. *See de la Garza v. State,* 898 S.W.2d 376, 378 (Tex.App.—San Antonio,1995) (affirming drug conviction when excluded evidence merely showed that three illegal aliens were apprehended near where drugs and defendant were found).

A defendant who is able to offer evidence of *both* motive *and* opportunity by an "aaltperp," however, is in a different position. As Professor McCord notes, appellate courts have almost invariably reversed when proffered evidence of both motive and opportunity has been excluded by the trial court. *See* McCord, *supra* note 3, at 951, 959. In *Blum, supra,* for example, the United States Court of Appeals for the Second Circuit reversed convictions when the defendant was prohibited from presenting evidence that the third party had both a motive and an opportunity to commit the crime in question. *Id.* at 68. In reversing, the Court stressed that "the Constitution guarantees criminal defendants the right to present a defense." *Id.* at 67. *See also United States v. Vallejo,* 237 F.3d 1008, 1022–23 (9th Cir.2001) (reversing because defendant convicted of transporting drugs in automobile was prevented from presenting evidence that previous owner of vehicle had used it to transport drugs and thereby prevented defendant from "provid[ing] an alternative theory of how the drugs were secreted in [defendant's] car without his knowledge"); *Crosby, supra,* at 1347 (reversing because defendant was prevented from presenting evidence that jealous husband had "opportunity, ability, and motive to commit the crime."); *cf. Johnson v. Brewer,* 521 F.2d 556, 562 (8th Cir.1975) (reversing because trial court excluded defendant's evidence attempting to prove that the government's informer and witness had "framed" another defendant in a parallel case).

Appellant offered no substantive defense to the marijuana, drug paraphernalia, and DUI charges (Counts II, III, and VII), and we do not disturb those convictions. However, Appellant did attempt to offer a defense to the methamphetamine-related charges: that Kuhl planted the methamphetamine-related

products in the vehicle without his knowledge. The avowal testimony and document support this theory by substantiating Kuhl's jealousy of Hanks and her worry that Hanks would "break up" Kuhl's relationship with Huskey. The document also illustrated Kuhl's affection for scheming, evidenced by her admissions on the cardboard document that "[w]e were trying to '*set him up,*' and 'we planned it.'" (Emphasis added.) The jury was aware, of course, that Kuhl had the *opportunity* to place the drugs in her own vehicle. However, without evidence of her *motive* for doing so, Appellant's defense was left in shambles.

■ The error seems to have stemmed from the trial court's belief that Appellant's only purpose in offering the evidence was to impeach Kuhl's credibility. *See Blum, supra,* at 68 ("We do not share the district court's view that [defendant] attempted to introduce this evidence primarily to impeach [the "aaltperp's"] credibility."); *Pettijohn, supra,* at 479 (noting that state court's relevancy ruling improperly "focused on impeachment, not upon the use of the evidence to present a direct defense upon one's behalf"). The trial court thus did not address the crucial question of whether KRE 403 authorized exclusion of the evidence for *substantive* purposes. If it had, the evidence would have been admitted. Neither the document nor Kuhl's testimony was cumulative. The avowal testimony took only minutes, and there was little potential for the jury to have been confused or misled. *See Blum, supra,* at 68 ("Indeed, given the importance of the testimony to the defense, whatever confusion that may have resulted from its admission would have to have been overwhelming to satisfy Rule 403's balancing test.") (quotation omitted). In fact, Kuhl's jealousy answers the trial court's query, *supra,* as to why Kuhl would

lend a vehicle containing a methamphetamine laboratory to an innocent person. *See Vallejo, supra,* at 1023 (noting that defendant "was not allowed to provide an answer for the jurors' question: 'If defendant did not know there were drugs in the car and did not place them there himself, who did?'"). Finally, because this evidence was proffered by Appellant, there was no risk of undue prejudice. As stated by Wigmore:

> [I]f the evidence [that the crime was committed by someone else] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

1A John Henry Wigmore, *Evidence in Trials at Common Law § 139* (Tiller's rev. 1983).

■ Nor was the error harmless. Appellant was denied "the right to present a defense, the right to present [his] version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas,* 388 U.S. at 19, 87 S.Ct. at 1923. Because this error implicated Appellant's constitutional right to Due Process, reversal is required absent evidence rendering the exclusion "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Pettijohn, supra,* at 482 ("While it may be possible that erroneous exclusion of a defendant's evidence could be harmless beyond a reasonable doubt, we do not think this is such a case.") (internal citation omitted); *see also Barth v. Commonwealth,* Ky., 80 S.W.3d 390, 395 (2001); *Holloman v. Commonwealth,* 37 S.W.3d at 767. Because of the fundamental importance of the evidence to Appellant's defense, we cannot conclude beyond a rea-

sonable doubt that the error was harmless. "No matter how credible [the "aaltperp"] defense, our system of justice guarantees the right to present it and be judged by it." *Pettijohn, supra,* at 483. Thus, we are required to reverse the methamphetamine-related convictions (Counts IV, V, and VI) and remand those charges for a new trial.

## VI. DOUBLE JEOPARDY.

■ Appellant contends that his convictions of manufacturing methamphetamine and possession of methamphetamine violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution. The alleged error was unpreserved. We address it under the authority of *Sherley v. Commonwealth,* Ky., 558 S.W.2d 615, 618 (1977) ("failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand"); *Gunter v. Commonwealth,* Ky., 576 S.W.2d 518, 522 (1978); *Baker v. Commonwealth,* Ky., 922 S.W.2d 371, 374 (1996); and *Butts v. Commonwealth,* Ky., 953 S.W.2d 943, 944–45 (1997), and because the issue will necessarily recur on retrial. Recall that methamphetamine was found in two places and forms in the vehicle. First, Deputy Phelps testified that methamphetamine was found being "cooked" in a jar in the trunk of the vehicle. He also testified that he found methamphetamine residue on a piece of burnt aluminum foil in a duffel bag in the back seat.

■ Our rule against multiple prosecutions for the same course of conduct parallels the federal rule announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Commonwealth v. Burge,* Ky., 947 S.W.2d 805, 809–811 (1996).

If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." ... [T]wo different statutes define the "same offense," typically because one is a lesser included offense of the other.

*Rutledge v. United States,* 517 U.S. 292, 297, 116 S.Ct. 1241, 1245, 134 L.Ed.2d 419 (1996), *quoting Blockburger, supra,* at 304, 52 S.Ct. at 182. This is, properly speaking, a rule of statutory interpretation in a case such as this one; neither the United States nor the Kentucky Constitution proscribes the imposition of multiple punishments for separate offenses committed during the course of a single criminal episode. *See* Robert G. Lawson and William H. Fortune, *Kentucky Criminal Law* § 6–3(d)(2), at 237 (LEXIS 1998). The rule against "double jeopardy" in this situation "presume[s] that 'where two statutory provisions proscribe the same offense,' a legislature does not intend to impose two punishments for that offense." *Rutledge, supra,* at 297, 116 S.Ct. at 1245, *quoting Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). The General Assembly codified this presumption and the *Blockburger* test in KRS 505.020. *Burge, supra,* at 809–11.

The question presented is whether the Commonwealth violated KRS 505.020 by convicting Appellant of both manufacturing methamphetamine under KRS 218A.1432(1)(a) and possession of a controlled substance (methamphetamine) in the first degree under KRS 218A.1415(1). We address this issue in two parts. First, under *Blockburger, supra,* do KRS 218A.1432(1)(a) and KRS 218A.1415(1) each require proof of an element that the other does not? Second, were the two

convictions predicated upon the same offense?

### A. Blockburger Test.

This issue pertains to the methamphetamine that was being "cooked" in the jar in the trunk of the vehicle. Each statute, KRS 218A.1432(1)(a) and KRS 218A.1415 (1), has three principal elements. A defendant violates KRS 218A.1432(1)(a) when he (1) knowingly and unlawfully (2) manufactures (3) methamphetamine. A defendant violates KRS 218A.1415(1) when he (1) knowingly and unlawfully (2) possesses (3) methamphetamine. The only distinction between the two statutes is the difference between "manufacture" and "possess." KRS 218A.1431(1) defines "manufacture" as "the production, preparation, propagation, compounding, conversion, or processing of methamphetamine ...." KRS chapter 218A does not define "possession" and the definition at KRS 500.080(14) applies, pursuant to that statute, only to penal code offenses. *Cf. Rasmussen v. Commonwealth*, Ky., 705 S.W.2d 914, 915 (1986) (definitions in KRS 510.010 are restricted by that statute only to KRS chapter 510 offenses). Nevertheless, we have held that "possession" for purposes of KRS chapter 218A includes both actual and constructive possession. *Houston v. Commonwealth*, Ky., 975 S.W.2d 925, 927–28 (1998); *Leavell*, 737 S.W.2d at 697.

Most jurisdictions that have considered the issue agree that convictions of "manufacturing" and "possessing" the same unit of a controlled substance fail the *Blockburger* test. Recently, the Supreme Court of Colorado addressed the issue *en banc* in *Patton v. People*, 35 P.3d 124 (Colo.2001). Analyzing statutes identical to our own in all relevant respects, *Patton* concluded that possession of methamphetamine was a lesser included offense of manufacturing methamphetamine for purposes of double jeopardy. *Id.* at 127.

Comparing the meanings of "manufacture" and "possession," it is evident that one who manufactures a controlled substance also possesses the substance in the course of manufacturing it. "Possession" requires immediate and knowing control over the substance. Logic dictates that such control is required in the production of the substance.... [W]e can envision no scenario in which an individual can manufacture methamphetamine without also possessing it.

*Id.* at 131. *See Craig v. State*, 314 Ark. 585, 863 S.W.2d 825, 827 (1993) ("In proving the offense of manufacturing, the state must necessarily show the defendant has control of the controlled substance in order to manufacture it. That being so, possession of the substance is necessarily a lesser included offense of the manufacturing."); *Anderson v. State*, 447 So.2d 236, 238 n. 3 (Fla.Dist.Ct.App.1983) (possession of marijuana is "considered the 'same' offense for double jeopardy purposes" as manufacturing marijuana); *Mudd v. State*, 483 N.E.2d 782, 784 (Ind.Ct.App.1985) ("The proof required to establish manufacture of marijuana necessarily establishes possession as well; one cannot knowingly or intentionally manufacture the drug without also possessing it to that end."); *see also United States v. Miller*, 870 F.2d 1067, 1071 (6th Cir.1989) (the offense of manufacturing marijuana is likely to include proof of possession); *but see State v. Spivie*, 581 N.W.2d 205, 209 (Iowa Ct.App.1998) (proof of manufacturing does not necessarily include proof of possession, *e.g.*, one could finance the manufacture of a controlled substance without ever possessing it). Further, in *United States v. Buchanan*, 830 F.2d 146 (10th Cir.1987), the Court of Appeals for the Tenth Circuit, in holding that convictions of possession and manufacturing an explosive device failed the *Blockburger* test, noted that "numerous

courts . . . have recognized that possession is always incidental to manufacture and that the two offenses merge for the purposes of sentencing." *Id.* at 148.

■■■ The Commonwealth argues that a contrary result is required because it is possible to manufacture methamphetamine without possessing methamphetamine, *i.e.,* a defendant can be convicted of manufacturing methamphetamine by taking one step in the manufacturing process, yet not be guilty of "possessing" methamphetamine if the process is never completed. We disagree. The definition of "manufacture," *i.e.,* "the production, preparation, propagation, compounding, conversion, or processing of methamphetamine," obviously contemplates a finished product. If Appellant had been charged not with actually manufacturing methamphetamine under KRS 218A.1432(1)(a) but with possessing the chemicals or equipment necessary to do so under KRS 218A.1432(1)(b), the scenario offered by the Commonwealth would support a conviction under the latter subsection.[5] Or if Appellant had been in possession of less than all of the chemicals or equipment necessary for the manufacture of methamphetamine but had actually begun the manufacturing process, the Commonwealth's scenario would support a conviction of criminal attempt to manufacture methamphetamine under KRS 506.010(1)(b). *See Kotila v. Commonwealth,* Ky., 114 S.W.3d 226, 245 (2003) (citing *United States v. Smith,* 264 F.3d 1012, 1016–17 (10th Cir.2001)). However, Appellant could not have been convicted of manufacturing methamphetamine under KRS 218A.1432(1)(a) unless he actually manufactured some quantity of methamphetamine. In that scenario, if the manufacturing process was performed by the defendant, *compare Spivie, supra,* at 209, possession of the manufactured methamphetamine is an element of the offense of manufacturing; and a conviction of a separate offense of possession would be double jeopardy. KRS 505.020(1)(a). Appellant did, in fact, complete the process of manufacturing a quantity of methamphetamine, allowing him to be convicted under KRS 218A.1432(1)(a) of actually manufacturing methamphetamine. However, under the facts of this case, he could not also be convicted of a separate offense for possessing the methamphetamine that he manufactured. That would be akin to convicting a defendant of trafficking in and possession of the same controlled substance because one must possess the substance before one can sell or transfer it to another. *Mangrum v. Commonwealth,* Ky., 674 S.W.2d 957, 958 (1984) (convictions of complicity to both selling and possessing with intent to sell marijuana constituted double jeopardy).

*B. Same Offense.*

■■■ This issue pertains to the methamphetamine residue on the piece of burnt aluminum foil found in the back seat of the vehicle and the wording of the instruction on possession of a controlled substance in the first degree. The question is whether the manufacturing and possession convictions were predicated upon the same underlying facts. Without this factual unity, multiple convictions are not proscribed. KRS 505.020(1). For example, in the precode case of *Wallace v. Commonwealth,* 207 Ky. 122, 268 S.W. 809 (1925), our predecessor court held that a defendant who shot several police officers during a single course of conduct could be successively convicted of murdering each officer under the same statute without violating

---

5. In fact, Appellant was originally indicted under Count IV of violating KRS 218A.1432(1)(b). A superseding indictment issued one week before trial amended Count IV to charge, instead, a violation of KRS 218A.1432(1)(a).

double jeopardy. *Id.* at 813; *see also Hennemeyer v. Commonwealth*, Ky., 580 S.W.2d 211, 215 (1979) (defendant properly convicted of six counts of wanton endangerment in the first degree for firing six shots at pursuing police officers during vehicle chase); *Slone v. Commonwealth*, 266 Ky. 366, 99 S.W.2d 207, 209 (1936) ("If one should throw a bomb in a crowd, and kill several persons, it could not be maintained that his conviction for the death of one of them would bar a prosecution against him for the killing of any of the others.") (quotations omitted).

In the same way, Appellant was properly convicted of both possessing methamphetamine and manufacturing methamphetamine per KRS 505.020(1) if the methamphetamine that he was convicted of possessing was not the same methamphetamine that he was convicted of manufacturing. *See United States v. Graham*, 275 F.3d 490, 519–20 (6th Cir.2001) ("We have upheld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts."). Unfortunately, we are unable to discern from the jury's verdict in the case *sub judice* which quantity of methamphetamine Appellant was convicted of possessing.

As noted *supra*, if the conviction of possession was premised upon the methamphetamine found in the jar in the trunk of the vehicle, KRS 505.020(1)(a) would require that the possession conviction be vacated. However, if the conviction was premised upon the methamphetamine residue found on the piece of burnt aluminum foil in the duffel bag in the back seat, the conviction would not necessarily violate KRS 505.020(1)(a). This residue would have been sufficient to support a conviction under KRS 218A.1415(1), *see Bolen v. Commonwealth*, Ky., 31 S.W.3d 907, 909 (2000), *Commonwealth v. Shivley*, Ky., 814 S.W.2d 572, 574 (1991), and a reasonable jury could have believed that this residue was not a product of the manufacturing process occurring in the trunk of the vehicle, *e.g.*, the residue represented methamphetamine purchased on the street or manufactured elsewhere and used personally by Appellant. With such a finding, a reasonable jury could have convicted Appellant of manufacturing methamphetamine (based upon the manufacturing process occurring in the trunk of the vehicle) and possession of methamphetamine (based upon the residue found in the back seat) without violating KRS 505.020(1)(a).

Unfortunately, the jury instructions did not require the jury to make this distinction in the verdict. Instruction Number 8 was the manufacturing instruction. Instruction Number 9, the possession instruction, provided as follows:

> You will find the Defendant guilty of first-degree possession of a controlled substance under this Instruction, if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on about November 8, 2000, he had in his possession a quantity of methamphetamine.
>
> AND
>
> B. That he knew the substance so possessed by him was methamphetamine.

To avoid double jeopardy, the instruction should also have contained the following or a similar proviso:

> AND
>
> C. If you have found the Defendant guilty of manufacturing methamphetamine under Instruction No. 8, that the substance so possessed by him was not a product of the same manufacturing process for which you have found him guilty under that Instruction.

That or some similar distinguishing proviso would have protected Appellant's right to be free of double jeopardy. However, because Instruction Number 9 did not require the jury to distinguish between the two offenses, we cannot know that the jury convicted Appellant of possession of methamphetamine that was not a product of the manufacturing process for which he was also convicted under Instruction No. 8. *See Miller v. Commonwealth,* Ky., 77 S.W.3d 566, 576 (2002) ("Whether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.").

Thus, we would be bound to reverse Appellant's conviction for possession of methamphetamine for a new trial even if reversal was not required on the Due Process ground discussed *supra.* This would be true even though the sentence imposed for Appellant's possession conviction was ordered to run concurrently with Appellant's other more lengthy sentences. *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) ("[t]he separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.").

## VII. VERDICT ERROR.

The final issue relates to a jury error in the return of the drug paraphernalia penalty verdict. The jury found Appellant guilty of possession of drug paraphernalia during the guilt phase of the trial. The issue of whether Appellant was a first (Class A misdemeanor) or second (Class D felony) offender, KRS 218A.500(5), was re-

served to the penalty phase of the trial. *Cf. Commonwealth v. Ramsey,* Ky., 920 S.W.2d 526 (1996). Accordingly, in the penalty phase, the court instructed the jury that it should find Appellant guilty of possession of drug paraphernalia, second offense, and sentence him to one to five years imprisonment if, and only if, the jury believed beyond a reasonable doubt that at the time he committed the present offense he "had been previously convicted of the offense of possession/use of drug paraphernalia one or more times."

The trial court then instructed the jury as to the penalty range for possession of drug paraphernalia, first offense:

If you did not find the Defendant guilty of Use/Possession of Drug Paraphernalia, Second Offense, then he stands convicted of Possession/Use of Drug Paraphernalia, First Offense. You shall now fix his punishment for that offense at confinement in the county jail for a period not to exceed 12 months, at a fine not to exceed $500.00, or both confinement and fine, in your discretion.

The prosecution introduced a Kenton Circuit Court document entitled "Final Judgment on Plea of Guilty" dated January 21, 1998, showing that Appellant had previously pled guilty to possession of drug paraphernalia, second offense, and had been sentenced to one year imprisonment. Appellant did not cross-examine the witness authenticating this document or otherwise dispute its accuracy.

Following deliberations, the jury returned a verdict finding Appellant guilty on the "second offense" page of the instructions and fixed his sentence at three years. Then, disregarding the instructions, the jury also fixed his sentence at "twelve months" on the "first offense" page of the instructions. Upon encountering these inconsistent verdicts, the trial court recognized the entry of "twelve

months" as a mistake and simply disregarded it.

> Court: Next instruction, now, the next instruction is signed by the foreperson and it gives a verdict of twelve months, which states "if you did not find the defendant guilty of use/possession of drug paraphernalia, second offense, then he stands convicted of first offense." It may not have been entirely clear, but obviously you did find him guilty, so this says "if you did not," so this form should not have been filled out. It does give a sentence of twelve months and it is signed by the foreperson. I'm going to turn over to the next one.

Defense counsel did not object to this remedy and, when asked if he had any questions about the verdict, whether he wished to poll the jury, and whether there was any reason not to discharge the jury, responded in each instance, "No, your honor." The jury was then discharged and, although Appellant subsequently presented the court with a motion for a new trial, he did not assert any error with respect to the sentencing verdict on his conviction of possession of drug paraphernalia, second offense. Nevertheless, Appellant now claims that failing to resubmit the issue to the jury resulted in "manifest injustice." RCr 10.26.[6]

▮▮▮ It is well established in Kentucky that a failure to object to a verdict that is inconsistent, ambiguous, or otherwise unclear constitutes a waiver for purposes of appeal. *E.g., Foster v. Commonwealth,* Ky., 507 S.W.2d 443, 445 (1974); *Prince v. Commonwealth,* Ky.App., 576 S.W.2d 244, 246 (1978). There are only three excep-

tions. The first two were established in *Smith v. Crenshaw,* Ky., 344 S.W.2d 393 (1961), in which our predecessor Court held that it would consider a claim on appeal despite a failure to object before the jury has been discharged when (1) "the verdict fails to determine a particular claim;" or (2) the verdict "is so ambiguous that it cannot be ascertained what determination has been made of the claim." *Id.* at 395; *see also Franklin v. Commonwealth,* Ky., 490 S.W.2d 148, 151 (1972) (finding verdict "patently unintelligible and impossible for the trial court to interpret without speculation"). We recognized the third exception in *Caretenders, Inc. v. Commonwealth,* Ky., 821 S.W.2d 83 (1991), holding that we will also address such a claim if it *both* (1) alleges a "substantive" error, *and* (2) was raised before the trial court, albeit sometime after the jury was discharged, such as in a motion for a new trial. *Id.* at 85. In all other circumstances, a complaint about the consistency, ambiguity, or clarity of the verdict is waived if not raised while the jury remains empaneled.

The Court of Appeals for the Eighth Circuit explained the rationale behind the parallel federal rule:

> The purpose of the rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury. This prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict.

*Lockard v. Mo. Pac. R.R. Co.,* 894 F.2d 299, 304 (8th Cir.1990) (citation omitted). We have repeatedly affirmed the trial court's authority in most circumstances to order the jury to make its verdict clear

---

**6.** Appellant also asserts that this, too, was a double jeopardy violation and, therefore, accessible on appeal. However, he does not explain this theory or present any arguments in support of that position. Obviously, double

jeopardy could have occurred only if the trial judge had accepted both verdicts and entered a judgment convicting Appellant of two offenses. He did not.

and consistent when an objection is made, either by informal poll or direction to reconvene and reconstitute the verdict. *Bush v. Commonwealth,* Ky., 839 S.W.2d 550, 556 (1992) (approving informal poll); *Bogie v. Commonwealth,* Ky., 467 S.W.2d 767, 769 (1971) (approving sending jury back to correct verdict); *Wright v. Commonwealth,* Ky., 455 S.W.2d 561, 562 (1970) (same); *Mathis v. Commonwealth,* Ky., 447 S.W.2d 641, 644 (1969) (approving informal poll). However, these remedies are only possible *before* the jury has been discharged. *See Burchett v. Commonwealth,* Ky.App., 734 S.W.2d 818, 820 (1987) ("Although a trial court has the authority *before* accepting a verdict and before discharging a jury to send it back to correct a mistake in its verdict, it is axiomatic that an ambiguous or incorrect verdict must be corrected prior to the time the jury is discharged."). In this case, Appellant failed to object to the verdict as inconsistent, incorrect, or ambiguous before the jury was discharged.

■ Moreover, Appellant fits none of the exceptions articulated *supra.* First, the jury's verdict addressed every claim in the indictment. Second, the verdict was not so ambiguous that the trial court could not ascertain what determination was made of the relevant claim. The jury unambiguously found Appellant guilty of possessing drug paraphernalia as a *second* (or greater) offense and that finding was supported by uncontradicted evidence. The trial judge correctly determined that the additional act of fixing a sentence for what was essentially a lesser included offense amounted to surplusage. *Cf. McGinnis v. Wine,* Ky., 959 S.W.2d 437, 439 (1998); *Jones v. Jones,* 938 F.2d 838, 845 (8th Cir.1974). Finally, Appellant did not present this issue to the trial court in his motion for a new trial or at any other time.

Accordingly, the judgments of convictions and the sentences imposed by the Logan Circuit Court for (1) DUI, (2) trafficking in marijuana, and (3) possession of drug paraphernalia, second offense, are affirmed. The convictions of (4) manufacturing methamphetamine, (5) possession of a controlled substance in the first degree, and (6) possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine, and the sentences imposed for those convictions, are reversed and remanded for a new trial in accordance with the contents of this opinion.

All concur.