Timothy SHEMWELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2008–SC–000102–TG.

Supreme Court of Kentucky.

Aug. 27, 2009.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Timothy Shemwell, was convicted by an Ohio Circuit Court jury of manufacturing methamphetamine under KRS 218A.1432(1)(a), possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine, possession of a methamphetamine precursor, possession of marijuana, less than eight ounces, and possession of drug paraphernalia. For these crimes, Appellant received consecutive sentences totaling forty-five years' imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

Appellant asserts five arguments on appeal: 1) that his convictions for manufacturing methamphetamine and possession

of a methamphetamine precursor violated double jeopardy; 2) that his convictions for manufacturing methamphetamine and possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine violated double jeopardy; 3) that he was substantially prejudiced and denied due process by the admission of evidence indicating he owned a sawed-off shotgun; 4) that he was substantially prejudiced and denied due process by the admission of testimony that he had been suspected of drug activity for years; and 5) that the trial court erred by not declaring a mistrial and severing the trial after his co-defendant was questioned about her prior drug use. For the reasons set forth herein, we affirm Appellant's conviction and sentence.

On February 25, 2004, the Ohio County Sheriff's Department responded to a domestic dispute call at Appellant's residence. Upon arriving there, Deputy Danny Kessinger found Appellant, Appellant's ex-wife Betty Shemwell, Appellant's friend Reva Roeder, and Roeder's son. Deputy Kessinger also found evidence of a suspected methamphetamine lab. After getting permission from Appellant, a thorough search of the property ensued. In Appellant's garage, lithium batteries, batteries with lithium strips removed, and two small canisters containing hemostats and suspected marijuana seeds were found. Inside a shed, the police discovered a five-gallon bucket containing lithium strips and a pink powder which later tests revealed to contain ephedrine or pseudoephedrine. Directly outside the shed, starter fluid cans with holes in the bottom were found. On a tractor, a wooden spoon with methamphetamine residue was located. Also scattered around Appellant's property were a blender, scales, plastic baggie corners, a two-quart container containing ammonia, a two-quart container containing a two-layered substance consisting of liquid on the top and a sludge of pseudoephedrine on the bottom, two cans of fuel in a trash can, two containers of salt, drain cleaner, tubing, and a propane tank containing ammonia. Inside Appellant's house, police discovered nine empty Sudafed packets inside a coat pocket and inside Reva Roeder's purse, a wet coffee filter with methamphetamine residue. Based in large part on the evidence collected, Appellant was indicted and ultimately found guilty of the above listed crimes in a joint trial with Reva Roeder.

## I. APPELLANT'S CONVICTIONS FOR MANUFACTURING METHAMPHETAMINE AND POSSESSION OF A METHAMPHETAMINE PRECURSOR DO NOT VIOLATE DOUBLE JEOPARDY

Appellant first argues that his conviction for manufacturing methamphetamine under KRS 218A.1432(1)(a) and possession of a methamphetamine precursor under KRS 218A.1437(1) violate double jeopardy. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution prohibits multiple punishments for the same criminal act or transaction. Appellant argues that the two crimes constitute "a continuing course of conduct" and was "uninterrupted by legal process," thus violating our statutory rule on double jeopardy, KRS 505.020(1). Further, Appellant questions whether each crime "requires proof of an additional fact which the other does not" violating the rule laid out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *See also Commonwealth v. Burge*, 947 S.W.2d 805, 809–811 (Ky. 1996).

To be convicted under KRS 218A.1432(*l*)(a), manufacturing methamphetamine, it must be proven that the defendant "knowingly and unlawfully . . .

manufacture[d] methamphetamine." The corresponding jury instruction for the manufacturing methamphetamine charge in this case was:

You will find [Appellant] guilty of Manufacturing Methamphetamine under this instruction, if and only if, you believe from the evidence beyond a reasonable doubt that in Ohio County on or about February 25, 2004, and before the finding of the Indictment herein, he knowingly and unlawfully manufactured methamphetamine.

To be convicted under KRS 218A.1437(1), possession of a methamphetamine precursor, it must be proven that the defendant "knowingly and unlawfully possesse[d] a drug product or combination of drug products containing ephedrine, pseudoephedrine, or phenylpropanolamine, or their salts, insomers, or salts or isomers, with the intent to use the drug product or combination of drug products as a precursor to manufacturing methamphetamine or other controlled substance." The corresponding jury instruction for the possession of a methamphetamine precursor charge was:

You will find [Appellant] guilty of Unlawful Possession of a Methamphetamine Precursor under this instruction, if and only if, you believe from the evidence beyond a reasonable doubt that in Ohio County on or about February 25, 2004, and before the findings of the Indictment herein, he knowingly and unlawfully possessed ephedrine or pseudoephedrine with the intent to use the substance as a precursor to manufacturing methamphetamine or other controlled substance.

■ A review of the statutes and jury instructions for these crimes show that double jeopardy was not violated. Each statute clearly requires that to be guilty, the defendant must have committed separate and distinct acts, each completed at different times. To be guilty under KRS 218A.1432(1)(a), one must have "actually manufactured some quantity of methamphetamine." *Beaty v. Commonwealth*, 125 S.W.3d 196, 212 (Ky.2004). To be guilty under KRS 218A.1437(1), one must have the precursor necessary to produce methamphetamine and the intent to use it to produce methamphetamine *in the future*. Thus, the unique element between the two offenses is whether the defendant has manufactured methamphetamine in the past, or whether he has the materials and intent to produce it in the future. KRS 218A.1432(1)(a) and KRS 218A.1437(1) do not violate the *Blockburger* rule or KRS 505.020(1).

Further, the jury instructions did not violate the principles laid out in *Beaty*, 125 S.W.3d at 212. In *Beaty*, we held that a conviction for possession of methamphetamine, KRS 218A.1415, and manufacturing methamphetamine violated double jeopardy due to the manner in which the jury instructions were drafted. *Id.* at 213. The problem in *Beaty* was that the jury instruction for possession of methamphetamine did not clearly state that it was based upon different methamphetamine than that which the defendant manufactured. *Id.* Thus, we held that the convictions potentially came from the same criminal act or transaction, and double jeopardy was violated. *Id.* In this case, the jury instructions adequately reflected the difference in the crimes. The instruction on the manufacturing methamphetamine charge indicated that Appellant had already committed this crime. The instruction on the possession of a manufacturing precursor indicated that he possessed the precursor with the intent to manufacture methamphetamine in the future. There was adequate evidence presented to support both instructions. Ap-

pellant's right to be free from double jeopardy was not violated.

## II. APPELLANT'S CONVICTIONS FOR MANUFACTURING METHAMPHETAMINE AND POSSESSION OF ANHYDROUS AMMONIA DO NOT VIOLATE DOUBLE JEOPARDY

■ Appellant next argues that his convictions for manufacturing methamphetamine under KRS 218A.1432(1)(a) and possession of anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine under KRS 250.489(1) violate double jeopardy. Appellant's main argument is that the crime of possession of anhydrous ammonia in an unapproved container constitutes "a continuing course of conduct" in tandem with the crime of manufacturing methamphetamine. Again we will analyze these two statutes using the *Blockburger* test and KRS 505.020.

KRS 250.489(1) states that "[I]t shall be unlawful for any person to knowingly possess anhydrous ammonia in any container other than an approved container." KRS 250.991(2) sets forth the penalty for violating KRS 250.489(1):

> Any person who knowingly possesses anhydrous ammonia in a container other than an approved container . . . is guilty of a Class D felony unless it is proven that the person violated KRS 250.489 with the intent to manufacture methamphetamine in violation of KRS 218A.1432, in which case it is a Class B felony for the first offense and a Class A felony for each subsequent offense.

The jury instruction for this charge required that the jury find that Appellant "knowingly had in his possession a quantity of anhydrous ammonia" and that "the anhydrous ammonia was in a container other than an approved container." The instruction further required that the jury find that "[Appellant] was in possession of anhydrous ammonia with the intent of manufacturing methamphetamine."

Upon review, it is clear that there is no double jeopardy violation. KRS 250.489 prohibits possession of anhydrous ammonia in an unapproved container. KRS 218A.1432 makes no mention of anhydrous ammonia or what constitutes a proper container for it. Thus, on its face there is proof of an element required for KRS 250.489 that is not required for KRS 218A.1432. Further, while manufacturing methamphetamine requires that the defendant acted in the past, proving that the defendant possessed the anhydrous ammonia in an unapproved container with the intent to manufacture methamphetamine in the future requires proving how the defendant is going to act. Thus, the two crimes do not constitute a "continuing course of conduct" and do not violate double jeopardy. The *Blockburger* test and KRS 505.020 are not violated.

Appellant also briefly argues that we should review KRS 250.991 and KRS 218A.1432 to determine if the statutes are ambiguous. Appellant argues that since KRS 250.991, the penalty provision for KRS 250.489, makes reference to being "in violation of KRS 218A.1432" there is an ambiguity. However, KRS 250.991 clearly states that one must *intend* to be "in violation of KRS 218A.1432." The language is clear and there is no ambiguity.

## III. INTRODUCTION OF EVIDENCE REGARDING A SAWED–OFF SHOTGUN FOUND IN APPELLANT'S HOUSE WAS HARMLESS ERROR

Appellant next argues that the introduction into evidence of information regarding a sawed-off shotgun found at his residence was irrelevant and constitutes reversible

error. The first mention of the sawed-off shotgun was during the direct testimony of Detective Greg Clark. Detective Clark mentioned that a sawed-off shotgun was found during the police search of Appellant's property. The shotgun was again brought up during the Commonwealth's cross-examination of Appellant. The prosecutor asked Appellant if his house was searched by the police. Appellant testified that he knew certain items were seized from his living room, but was uncertain if his entire house was searched. The prosecutor then showed Appellant a picture of the sawed-off shotgun. The prosecutor asked Appellant about the picture causing his counsel to object to the questioning. The trial judge inquired how the prosecutor's question would be relevant. The prosecutor responded that since Appellant testified that he was unsure if his house was searched, the picture would rebut that testimony. The trial judge gave the prosecutor a chance to make the questioning relevant, but instructed the prosecutor to "tie it up quickly." The prosecutor then asked Appellant several questions regarding the sawed-off shotgun. Appellant ultimately admitted to owning the weapon. Since Appellant's counsel objected to the line of questioning, we will review this alleged error under our harmless error standard.

 In this matter, the introduction of the evidence regarding the sawed-off shotgun was error. Appellant's ownership of the sawed-off shotgun is irrelevant to the drug related crimes for which he was charged. *See Major v. Commonwealth*, 177 S.W.3d 700, 710 (Ky.2005) ("weapons which have no relationship to the crime are inadmissible"). Further, we reject the Commonwealth's assertion that the introduction of the shotgun evidence was necessary to rebut Appellant's testimony that he was unsure if the police searched his house. Whether Appellant believed or knew his entire house was searched was irrelevant and here was a collateral matter not subject to impeachment. *See Commonwealth v. Jackson*, 281 S.W.2d 891, 894 (Ky.1955) (holding that generally a witness may not be impeached with a matter which is irrelevant and collateral to the crimes of which he is charged) (overruled on other grounds by *Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969)). Additionally, the introduction of the sawed-off shotgun violated KRE 404(b) since the evidence is irrelevant but prejudicial to Appellant.

However, while the introduction of the sawed-off shotgun evidence was error, it was harmless. The testimony regarding the sawed-off shotgun from Detective Clark and Appellant was brief. The testimony only lasted for a few minutes in a trial which lasted for four days. Further, the evidence of Appellant's guilt regarding the drug crimes was sufficient and convincing. We cannot say that this error "substantially swayed" the judgment. *See Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky.2009).

## IV. TESTIMONY THAT APPELLANT HAD BEEN SUSPECTED OF DRUG ACTIVITY FOR YEARS WAS RESPONSIVE TO QUESTIONING

 Appellant next argues that he was substantially prejudiced and denied due process because of Detective Clark's testimony that the police suspected him of selling drugs for many years. Appellant's counsel asked Detective Clark on cross-examination, "Mr. Clark, you testified that you were looking for evidence of drug activity based on what ... Deputy Kessinger had told you on the phone?" After Detective Clark answered in the affirmative, Appellant's counsel asked "Can you

tell us exactly what he told you on the phone?" Detective Clark answered, "I can't say the exact words. I think due to his actions, throwing stuff into the semi-trailer like he's trying to get rid of evidence. [Appellant] has been on our, we've been looking at [Appellant] for a few years now as far as drug activity." Appellant's counsel did not object to Detective Clark's answer.

A minute or two later, Appellant's counsel asked Detective Clark about his decision not to arrest several people found on Appellant's property, "You accepted [Appellant's] word that they were good and law-abiding people even though you suspected that [Appellant] was making methamphetamine and you'd been watching him for years or whatever?" A few minutes after that question, Appellant's counsel again focused on the fact that Appellant was suspected of manufacturing drugs by asking, "Has Betty Shemwell ever called you and told you that you'll find a meth lab on [Appellant's] property?"

■ Generally "[o]ne who asks questions which call for an answer has waived any objection to the answer if it is responsive." *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky.1984). By repeatedly asking Detective Clark questions which mentioned or involved the police's suspicions about Appellant manufacturing drugs, Appellant waived any potential claim of error arising from the testimony. Further, Detective Clark's testimony answering these questions was responsive. It appears as though Appellant's questions regarding the prior suspicions were part of a greater trial strategy to prove he was set-up—either by the police or his ex-wife, Betty Shemwell. Thus, Appellant waived any right to object to the testimony regarding the suspicions about his prior drug manufacturing.

## V. NO MISTRIAL OR SEVERANCE WAS WARRANTED

■ Appellant finally argues that the trial judge erred by refusing to grant a severance or mistrial after the prosecutor questioned co-defendant Reva Roeder about her knowledge of methamphetamine. During cross-examination, the prosecutor asked Roeder if she had ever seen methamphetamine. Roeder claimed that she had not. Roeder also testified that she did not know how coffee filters—like the one found in her purse—were used in connection with manufacturing methamphetamine. Upon hearing this testimony, the trial judge held a bench conference where he instructed Roeder's counsel to make sure she did not commit perjury on the stand. The trial judge believed she might be committing perjury since she failed a drug test while out on bail. During the bench conference, Appellant's counsel expressed concern that the prosecutor may ask Roeder if she was a "professional meth addict." The trial judge, however, believed that the prosecutor could ask Roeder if she was familiar with methamphetamine to show her intent to possess or manufacture it.

During the re-cross examination of Roeder, the prosecutor asked if she had met Detective Payton prior to the charges in this incident being filed. She admitted that she met him at her house. Before the prosecutor could ask why Roeder had met Detective Payton, her counsel requested a bench conference. Roeder's counsel objected to the line of questioning because it dealt with her prior bad acts. The prosecutor noted, however, that during Detective Payton's visit to Roeder's house he found methamphetamine. Thus, this line of questioning was pertinent to show Roeder had committed perjury. The trial judge, referring to KRE 608(b), believed that specific instances of Roeder's miscon-

duct could be admitted to test the veracity of her testimony.

At this point, Appellant's counsel argued that this line of questioning would "poison the well" against him. Appellant moved for a severance arguing that Roeder's testimony was "grossly prejudicial." The trial judge denied the request. Upon the prosecutor asking Roeder if any illegal drugs were found by Detective Payton, she denied it. She also denied that any plastic baggies with white powder had been found. At the close of Roeder's case, Appellant's counsel moved for a mistrial. The trial judge denied the motion without stating any grounds.

 The decision to grant a mistrial is within the sound discretion of the trial court and such a ruling will not be disturbed absent an abuse of discretion. *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky.2005). "A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Id.* Appellant argues that the trial judge abused his discretion in not declaring a mistrial because he failed to see the prejudice the prosecutor's questions and Roeder's testimony caused Appellant under KRE 403. However, Roeder's testimony at trial was that she was unfamiliar with methamphetamine and that she did not know if it was found in her house. Thus, Appellant could not have been prejudiced due to Roeder's testimony since she denied ever seeing methamphetamine. Further, Appellant does not show how the prosecutor's relevant questioning of Roeder had any impact on his particular case. Appellant argues that the questions the prosecutor asked Roeder caused the jury to find him guilty by association. However, Appellant fails to present any evidence that this occurred. The evidence against Appellant was substan-tial, and the prosecutor's questioning of Roeder was not out of line. Thus, we cannot find that the trial judge abused his discretion in denying Appellant's motion for a mistrial.

 Further, RCr 9.16 states that a severance must be requested before the jury being sworn. This was not done and Appellant waived this issue. Additionally, Appellant has not shown that the joint trial prejudiced him.

Thus, for the foregoing reasons, the judgment and sentence of the Ohio Circuit Court is affirmed.

All sitting. All concur.