Jeffrey D. MCGAHA, Appellant

v.

COMMONWEALTH of Kentucky, Appellees

NO. 2014–CA–000834–MR

Court of Appeals of Kentucky.

RENDERED: AUGUST 28, 2015; 10:00 A.M.

BRIEFS FOR APPELLANT: Jeffrey D. McGaha, Pro Se, LaGrange, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Frankfort, Kentucky

BEFORE: JONES, J. LAMBERT, AND MAZE, JUDGES.

*OPINION*

LAMBERT, J., JUDGE:

Jeffrey McGaha, proceeding *pro se*, has appealed from the March 7, 2014, order of the Adair Circuit Court denying his post-conviction motion for relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 without an evidentiary hearing. Because we hold that the record refutes the issues of fact McGaha raises and that he is not entitled to relief, we affirm the order on appeal.

Our Supreme Court summarized the factual history of this case in its opinion on McGaha's direct appeal, which we shall adopt:

[McGaha] and the victim, Mike Cowan, were neighbors in a rural part of

Adair County. The evidence presented at trial by the Commonwealth indicated that the relationship between [McGaha] and Cowan was marred by a series of disputes. The most recent difficulty was over a light on [McGaha's] storage building that shone onto Cowan's property and annoyed him. Cowan retaliated by shining spotlights at [McGaha's] residence. On the evening before the fatal incident, [McGaha] complained to the police about the spotlights. When police officers arrived at the scene in response to that complaint, Cowan and his wife became belligerent. They were arrested and taken to jail.

The following afternoon, after his release from jail, Cowan visited a neighbor's residence on his ATV. As Cowan returned home, [McGaha], driving in his car, saw him and steered directly into his ATV without braking. The impact knocked Cowan off the ATV. As a result of the blow from [McGaha's] vehicle, Cowan suffered severe blunt force trauma which alone would have been fatal. After the collision, however, while Cowan was lying on the ground, [McGaha] approached him and delivered a second fatal injury by shooting him in the head with a shotgun.

[McGaha] was indicted for murder. At trial, [McGaha] admitted that he killed Cowan, but claimed that he was acting in self-defense. In support of that claim, [McGaha] presented evidence of Cowan's threats, harassment, and intimidation directed toward [McGaha] and members of his household. [McGaha] also alleged that shortly before the fatal incident, Cowan had pointed a gun at [McGaha] and gestured, as if he was pretending to shoot at [McGaha]. [McGaha] saw Cowan place the gun on his ATV, and ride it over to the neighbor's residence. [McGaha] testified that he followed Cowan to speak with him,

and that he took his shotgun for protection. [McGaha] said that when he encountered Cowan on his ATV, Cowan aimed his gun at [McGaha]. Fearing that he would be shot, [McGaha] drove his car into Cowan's ATV. After the collision, [McGaha] claims he got out of his car with his shotgun, and demanded that Cowan show his hands. According to [McGaha], Cowan then said, "I'm still going to fucking kill you." Believing that Cowan was reaching for his gun, [McGaha] shot him in the head.

The jury, rejecting [McGaha's] self-defense claim, convicted him of murder and recommended a sentence of twenty years' imprisonment. The trial court entered final judgment consistent with the jury's verdict and sentencing recommendation. [McGaha's] post-judgment motions for judgment notwithstanding the verdict and for a new trial were denied.

*McGaha v. Commonwealth*, 414 S.W.3d 1, 3–4 (Ky.2013), as modified (Sept. 26, 2013).

On direct appeal, McGaha raised four issues, including the failure of a juror to disclose a social media relationship with the victim's wife; the jury's consideration of penalty phase issues during the guilt phase; whether excluded evidence would have supported his self-defense claim; and whether a witness should have been permitted to testify that the victim had raised a gun at him twenty-five years previously. The Supreme Court rejected each of McGaha's arguments in its opinion affirming.

In addressing the exclusion of evidence argument related to the victim's racist speech, the Court stated as follows:

As previously noted, the evening before Cowan's death, Trooper Wolking responded to [McGaha's] 911 complaints about harassment by Cowan, involving

the spotlights focused upon [McGaha's] property. [McGaha] proffered Wolking's testimony, as avowal evidence, that Cowan referred to [McGaha's] fiancé and her child as the "nigger baby and its nigger mother." Wolking also said in his avowal testimony that Cowan had stated repeatedly that the "nigger baby and nigger mother needed to live down the road with the other niggers and Mexicans."

[McGaha] contends that this evidence was relevant to show Cowan's propensity for violence. While the statements made by Cowan were outrageously racist, it does not follow that this character flaw translates into a propensity for violent conduct. Thus, this particular evidence was of little probative value. On the other hand, its admission into evidence at trial would have substantially diminished the character of the victim in a way that would have been highly prejudicial to the Commonwealth's case. Cowan's racist comments to the police officer would unduly influence the jury simply because of the victim's verbal expressions of a racist attitude. It follows that the trial court did not abuse its discretion by excluding the evidence.

*Id.*, at 9–10. Related to testimony addressing the family's fear of the victim, the Supreme Court stated:

[McGaha] contends that the trial court improperly excluded the testimony of his fiancé and her child regarding their personal fear of Cowan because he had harassed and terrorized them. However, both witnesses testified, to a degree, regarding their fear of Cowan, and [McGaha] fails to cite us to any avowal testimony, or other means of making known the substance of the testimony that was excluded by the trial court. Thus, because of [McGaha's] failure to develop this argument sufficiently for us to undertake a meaningful review of the issue, he is not entitled to relief upon the grounds that the trial court excluded testimony of his household regarding their fear of Cowan.

*Id.* at 10 (footnote and citations omitted).

On August 1, 2013, McGaha filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to RCr 11.42, citing ineffective assistance of counsel. In addition, he moved for appointment of counsel and for an evidentiary hearing. McGaha asserted that his trial counsel failed to question the jury about racial prejudice and racially prejudicial remarks the victim had made; failed to hire expert witnesses regarding gunshot residue and accident reconstruction; failed to raise the defense of extreme emotional disturbance (EED); failed to introduce relevant mitigating evidence during the penalty phase; failed to file a motion in limine to prevent the trial court from excluding racial issues; and failed to object to the exclusion of evidence of hate speech by the victim. McGaha also alleged that his appellate counsel was ineffective for failing to file a reply brief or to adequately and sufficiently brief and cite to any testimony or avowal testimony to develop his argument.

On March 7, 2014, the trial court entered an order denying McGaha's motion for post-conviction relief without an evidentiary hearing. This appeal now follows.

The applicable standard of review in RCr 11.42 post-conviction actions is well-settled in the Commonwealth. Generally, in order to establish a claim for ineffective assistance of counsel, a movant must meet the requirements of a two-prong test by proving that: 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Gall v.*

*Commonwealth,* 702 S.W.2d 37 (Ky.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). Pursuant to *Strickland,* the standard for attorney performance is reasonable, effective assistance. The movant must show that his counsel's representation fell below an objective standard of reasonableness and bears the burden of proof. In doing so, the movant must overcome a strong presumption that counsel's performance was adequate. *Jordan v. Commonwealth,* 445 S.W.2d 878, 879 (Ky.1969); *McKinney v. Commonwealth,* 445 S.W.2d 874, 878 (Ky. 1969).

■ If an evidentiary hearing is held, the reviewing court must determine whether the lower court acted erroneously in finding that the defendant below received effective assistance of counsel. *Ivey v. Commonwealth,* 655 S.W.2d 506, 509 (Ky.App.1983). If an evidentiary hearing is not held, as in this case, our review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth,* 411 S.W.2d 321, 322 (Ky.1967). *See also Sparks v. Commonwealth,* 721 S.W.2d 726, 727 (Ky.App. 1986). More specifically, the Supreme Court set forth the applicable standard as follows:

> 2. After the answer is filed, the trial judge shall determine whether the allegations in the motion can be resolved on the face of the record, in which event an evidentiary hearing is not required. A hearing is required if there is a material issue of fact that cannot be conclusively resolved, *i.e.,* conclusively proved or disproved, by an examination of the record. *Stanford v. Commonwealth,* Ky., 854 S.W.2d 742, 743–44 (1993), *cert. denied,* 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994); *Lewis v. Common-*

*wealth,* Ky., 411 S.W.2d 321, 322 (1967). The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them. *Drake v. United States,* 439 F.2d 1319, 1320 (6th Cir.1971).

*Fraser v. Commonwealth,* 59 S.W.3d 448, 452–53 (Ky.2001).

The Supreme Court of Kentucky revisited the law addressing RCr 11.42 proceedings in *Haight v. Commonwealth,* 41 S.W.3d 436 (Ky.2001) (*overruled on other grounds by Leonard v. Commonwealth,* 279 S.W.3d 151 (Ky.2009)), noting that "[s]uch a motion is limited to the issues that were not and could not be raised on direct appeal." *Haight,* 41 S.W.3d at 441. The Court went on to state:

> In considering ineffective assistance, the reviewing court must focus on the totality of evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance. *See Morrow; Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).
>
> A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance. *McQueen v. Commonwealth,* Ky., 949 S.W.2d 70 (1997).

*Id.* at 441–42.

■ For his first argument, McGaha addresses alleged ineffective assistance of counsel during jury selection. First, he alleges that his trial counsel was ineffective for failing to question prospective jurors regarding racially prejudicial remarks made by the victim. In the order denying the motion for RCr 11.42 relief, the trial court stated:

[McGaha's] first argument for relief states that counsel performed deficiently by failing to question prospective jurors regarding their possible racial prejudice. [McGaha] argues uncovering racial bias was warranted because his girlfriend's daughter is bi-racial and lived with them. He suggested there "may" have been a juror with strong feelings about interracial relationships and that bias "may" have prevented him from receiving a fair trial.

There is no constitutional presumption of juror bias for or against certain racial groups. *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629[, 68 L.Ed.2d 22 (1981)]. Further, "there is no per se constitutional rule in such circumstances requiring inquiry on voir dire as to racial prejudices." *Id.* Under the facts at bar, [McGaha] has failed to establish the likelihood of racial or ethnic prejudice affecting the jurors. There is no reason to believe the facts of this case would somehow impede the jurors' ability to deal impartially with the subject matter. Race is not an issue. In fact, all the parties directly involved are of the same race, Caucasian. The issue for the jury was whether [McGaha] was acting in self-defense when he shot the victim. Counsel was not deficient in failing to inquire about possible racial prejudice. On the contrary, the attempt to question the venire regarding said subject matter would be improper.

McGaha contends that the trial court's reasoning was flawed, stating that "[r]ace is the entire issue of why this confrontation between Mr. McGaha and the Cowan's [sic] existed at all. (The races involved are White, Black, Hispanic, and Native American)."

The Commonwealth, on the other hand, cites to the United States Supreme Court's discussion of ineffective assistance as it relates to jury selection in *Yarborough v. Gentry,* 540 U.S. 1, 8, 124 S.Ct. 1, 5–6, 157 L.Ed.2d 1 (2003), in support of its argument that the trial court's ruling was correct:

When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Massaro v. United States,* 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *See Bell, supra,* at 702, 122 S.Ct. 1843; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland, supra,* at 689, 104 S.Ct. 2052; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

The Commonwealth also observes that "asking potential jurors whether they are racist is unlikely to elicit an honest response (if any are indeed racist) and is almost certain to alienate many jurors."

We agree with the Commonwealth that any failure on the part of McGaha's trial counsel to question jurors regarding racial prejudice did not in any way equate to ineffective assistance. This was a matter

of trial strategy, and such questioning would not have elicited the response McGaha was seeking, but instead would have put the jurors in the unquestionably awkward position of having to admit to being racist, if they were.

■ For his next argument pertaining to jury selection, McGaha challenges his trial counsel's failure to ask further questions of one of the jurors related to her relationship with the victim's family. This issue was raised, and rejected, on direct appeal in his argument addressing that juror's failure to disclose a social media relationship with the victim's wife during jury selection. In considering the questioning process, the Supreme Court observed:

Although succinct, her answers were responsive to the questions and truthful. We see in the record no indication that Juror 234 was attempting to conceal the social media relationship, or that she was in any way deceptive. Moreover, by her acknowledgment that she casually knew some of the Cowan family, [McGaha] was given an unfettered invitation to inquire further. He could have asked: "Which members of the Cowan family do you know?" Then, he could have followed up with other questions allowing him to discover the depth and scope of her acquaintances within the Cowan family. But, [McGaha] declined to do so.

While the parties have the right to assume that the answers given by potential jurors are complete, candid and truthful, we cannot expect potential jurors to appreciate the nuances of potentially disqualifying relationships, and volunteer answers to the questions that counsel failed to ask. Juror 234 manifestly did not give a false answer regarding her Facebook relationship with the victim's wife. If her casual relationship with some members of the Cowan family was cause for concern for any party, it was incumbent upon that party, not the juror, to delve more deeply into the matter. We see no misconduct on the part of Juror 234.

*McGaha,* 414 S.W.3d at 6.

■ However, as the Commonwealth argues in its brief, McGaha failed to include this argument in his motion for RCr 11.42 relief below. Therefore, this argument is not properly before the Court, and we shall not address it any further. "It is a matter of fundamental law that the trial court should be given an opportunity to consider an issue, so an appellate court will not review an issue not previously raised in the trial court." *Marksberry v. Chandler,* 126 S.W.3d 747, 753 (Ky.App.2003), as modified on reh'g (Jan. 30, 2004) (footnote omitted). Accordingly, we perceive no error in the trial court's ruling related to jury selection.

■ For his second argument, McGaha claims that his trial counsel was ineffective for failing to seek expert witnesses on gunshot residue (GSR) and accident reconstruction. In ruling on this argument, the trial court stated:

At trial, the Commonwealth's forensic expert testified that gunshot residue was found on the hands of both the victim and [McGaha]. Defense counsel ably cross-examined the witness and it was conceded that the gunshot residue found on the victim could have come from firing a gun. However, a plethora of witnesses testified that a gun was not found at the scene; therefore, apparently the jury did not believe the gunshot residue found on the hands of the victim was the result of firing a weapon. Again, this fails to establish defense counsel was deficient.

In his brief, McGaha disputes the testimony of the factual witnesses, and he implies that the gun had been removed from the victim prior to the arrival of the police by one of the witnesses to the shooting. He states: "Steve Phillips (Neighbor) was the first person to arrive at Cowan's body; three more people arrived before the police got there, Brandon Cowan, (Nephew), Billy Cowan (Brother), and Charlene Cowan (Wife). All of whom had ample opportunity to remove Cowan's gun before the police arrived." He also argues that if an unbiased expert had reviewed the evidence, that expert could have established how the gunshot residue got on the victim's hands. Therefore, he claims that his trial counsel "had an affirmative duty to have physical evidence in this case examined to determine whether or not it supported his client's testimony and to introduce that evidence which offered a plausible explanation for the most damaging elements of the Commonwealth's case."

At trial, firearms specialist Lawrence Pilcher testified about GSR and explained that this cloud of residue would follow the shot stream of the firearm until it hit something or fell to the ground due to gravity. Ken Rider, the Trace Section Supervisor at Kentucky State Police's Central Forensic Laboratory, analyzed the GSR swabs from the front and back of the victim's hands. This analysis consisted of measuring how much of three elements—barium, antimony, and lead—was detected on his hands. Mr. Rider concluded that significant amounts of all three elements were detected on inside (palms) and outside of both of the victim's hands. He then testified that there were three reasons the GSR might have been detected: 1) the victim could have handled an object with GSR on it; 2) he could have discharged a firearm; and/or 3) he could have

been in close proximity to a discharging firearm.

In his RCr 11.42 motion, McGaha contended that Mr. Pilcher, whom he refers to as Felcher, testified "that what traces of gun shot [sic] residue (GSR) that was found on Cowan's hands probably came from him attempting to put his hands towards the top of his head where impact of the buck shots fired from the shotgun that Jeff shot him with." And in his appellate brief, McGaha again makes a similar claim, attributing this statement that the victim had been trying to shield his face to the Commonwealth's expert witness. But as the Commonwealth states in its brief, no witness testified that the victim had GSR on his hands because he had been trying to protect his head.

Our review of the closing arguments establishes that the Commonwealth's Attorney put forth this theory that, based upon the testimony of the medical examiner, Mr. Pilcher, and Mr. Rider, the GSR was on the victim's hands because he had been trying to protect his head. In his closing argument, defense counsel also raised, and disputed, this theory, asserting that the evidence was just as strong to prove that the victim had handled, discharged, or was in close proximity to a firearm, rather than protecting his head. Through cross-examination and closing arguments, defense counsel was able to dispute the Commonwealth's theory, albeit unsuccessfully, and present an alternate theory as to how the GSR came to be on the victim's hands.

As to his trial counsel's failure to hire an accident reconstructionist, we agree with the Commonwealth that McGaha did not explain how such an expert might have supported his defense and testimony. Therefore, we hold that the record refutes McGaha's argument that his trial counsel was ineffective in failing to

hire an expert in GSR or an accident reconstructionist, and we reject this argument.

■ For his third argument, McGaha contends that his trial counsel was ineffective for failing to include evidence regarding the victim's racist speech and prejudice and for failure to raise an EED defense. For both of these arguments, the record refutes McGaha's claims.

In addressing the racist speech argument, the trial court stated:

The second part of [McGaha's] argument concerning racial bias involves the statements of the victim. The victim made racist statements to Trooper [Wolking] and [McGaha] maintains these statements should have been admitted in furtherance of his efforts to secure an instruction on extreme emotional distress (EED). This argument is addressed on direct appeal and the Court's decision to preclude the victim's racist speech was affirmed by the Kentucky Supreme Court.

Our review of the record establishes that defense counsel attempted numerous times during the trial to introduce the racist comments the victim had made. These racist statements were mentioned during voir dire, during defense counsel's opening statement, and during the testimony of McGaha's fiancé. The court would not permit such remarks to be introduced into evidence, reasoning that only fear-inducing language could be introduced and that the racial remarks would be more apt to induce anger, not fear. Defense counsel objected to the court's ruling.

■ As to McGaha's argument that his attorney failed to raise an EED defense, the record clearly refutes this assertion. Defense counsel sought to raise this defense by tendering jury instructions, including an EED instruction, as well as orally requesting this instruction. The court declined to do so, finding no evidence to establish a triggering event or that McGaha had been acting under a sudden passion or in the heat of the moment. Rather, the court based its decision on McGaha's own testimony that he had been sitting on the porch thinking about the situation and made a rational decision to meet with the victim to attempt to resolve their differences. Defense counsel objected on the record to the court's decision.

Therefore, we hold that the record refutes McGaha's claim and that he failed to establish ineffective assistance of counsel on this issue.

■ For his fourth argument, McGaha contends that his counsel was ineffective in failing to offer relevant mitigating evidence during the sentencing phase. The trial court rejected this argument, stating that evidence of McGaha's work history, peaceable nature, and education was already in the record. We agree with this observation of the record, and we further agree with the Commonwealth that any further mitigating evidence could not have resulted in a better outcome because the jury sentenced him to the minimum sentence of twenty years. *See* Kentucky Revised Statutes (KRS) 507.020(2) and KRS 532.030(1).

■ For his final argument, McGaha raises an IAAC claim, citing his appellate counsel's [1] failure in the direct appeal to present the Supreme Court with the evidence of the victim's racist remarks to show his propensity for violence; to sufficiently brief and cite to avowal testimony to support the argument; and to file a reply brief. The trial court rejected this claim, noting that McGaha had not offered

---

1. We note that McGaha's trial counsel represented him on direct appeal.

any support to this allegation and that he "was afforded excellent, competent, and experienced representation through the trial and appellate process." We agree.

In *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky.2010), the Supreme Court of Kentucky recognized the claim of ineffective assistance of appellate counsel (IAAC) in post-conviction RCr 11.42 proceedings.

> On the appeal of the trial court's order on the RCr 11.42 motion, it is incumbent on the Court of Appeals to review in the first instance the trial court's ruling regarding IAAC. If the Court of Appeals concludes that there was ineffective appellate assistance, then it should proceed to address the omitted issue or issues on which the IAAC claim is based. Should the Court of Appeals conclude that there was no IAAC meriting relief then, of course, it would be unnecessary for that Court to address the issue or issues omitted from the matter-of-right appeal. Any final opinion of the Court of Appeals would, as always, be subject to discretionary review by the Supreme Court pursuant to CR 76.20.

*Id.* at 440 (footnotes omitted). The Supreme Court went on to "emphasize 'ignored issues' to underscore that IAAC claims will not be premised on inartful arguments or missed case citations; rather counsel must have omitted completely an issue that should have been presented on direct appeal." *Id.* at 437. "Finally, the defendant must also establish that he or she was prejudiced by the deficient performance, which, as noted, requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." *Id.* (citation omitted).

We agree with the Commonwealth that McGaha's arguments are procedurally improper as the issues of the victim's racist remarks and of his and his family's fear of the victim were raised and rejected on direct appeal. Thus, they were not "ignored issues." Additionally, the filing of a reply brief is optional. *See* Kentucky Rules of Civil Procedure (CR) 76.12(1) ("An appellant ... may file a reply brief.")

For the foregoing reasons, the Adair Circuit Court's order denying McGaha's motion for RCr 11.42 relief is affirmed.

ALL CONCUR.