Charles STANFILL, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2015–CA–001323–MR

Court of Appeals of Kentucky.

JUNE 24, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court April 19, 2017

BRIEF FOR APPELLANT: Aaron Reed Baker, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Jeffrey R. Prather, Assistant Attorney General, Frankfort, Kentucky

BEFORE: CLAYTON, COMBS AND STUMBO, JUDGES.

## OPINION

COMBS, JUDGE:

Charles Stanfill has appealed from an order of the Calloway Circuit Court entered on August 13, 2015, denying his motion to vacate conviction under RCr[1] 11.42. After our review, we affirm the denial of the motion by the circuit court.

## I. *Background*

The underlying facts of the case are thoroughly detailed in Appellant's direct appeal before this Court.[2] On the afternoon of July 13, 2007, police officers arrived at Appellant's property searching for a fugitive or fugitives named Brett Preston or Billie Joe Preston. An officer testified that upon exiting his vehicle in the driveway, he smelled a strong chemical odor. Based on his training and experience, he believed the odor to be indicative of a methamphetamine lab. The officer received Appellant's permission to search an outbuilding, and he discovered a bottle with tubing known as a "generator," an item used in the manufacture of methamphetamine. Subsequent searches of the property led police to discover various items of drug paraphernalia, methamphet-amine ingredients, and finished methamphetamine. The officers then arrested Appellant, and he was indicted by a grand jury on charges related to methamphetamine manufacture approximately two months later on September 5, 2007.

From the initial pretrial stages, Appellant became increasingly unhappy with the services provided by his appointed counsel, Mr. Ernstberger. The court finally released the attorney during a hearing held on December 10, 2007. The Department of Public Advocacy reappointed Mr. Ernstberger to the case in January, 2008, and Appellant again declined the attorney's services. The court then permitted Appellant to file his own motions and to represent himself, *pro se,* for a few months. Mr. Ernstberger again appeared as counsel on or about April 22, 2008. Appellant's jury trial took place on May 20 and 22, 2008. On the morning of May 20th, Mr. Ernstberger presented a hybrid representation motion to the court solely for the purpose of allowing Appellant to present an opening argument. The court then addressed Appellant as follows:

All right. That's really not something that the Commonwealth would be able to object to one way or the other. And Mr. Stanfill, I am more than happy to do that. You're entitled to do that. I do want to say this to you before the trial, and I'm saying this because I want to be as candid as I can and whether you listen to me before when you allowed the court to, or you allowed Mr. Ernstberger to continue to assist you in this case, I don't care who you listen to. I think that was a wise decision. Now, and I have no problem with you serving as co-counsel. You're entitled to do that.

1. Kentucky Rules of Criminal Procedure.

2. *Stanfill v. Commonwealth,* 2008–CA–001718–MR, 2009–CA–000803–MR, 2010 WL 1253223 (Ky.App. Apr. 2, 2010).

And, but I want you to understand that you will be held to the same standard as an attorney as far as when you make the opening statement. If you say things that bring out things that would not be admissible at trial . . . you know, I don't want you to cause the court to have to declare a mistrial. Because that's not to your benefit. It's to no one's benefit. Um, I, you know, and I don't want you to, I hope you've gone over this with Mr. Ernstberger, and you don't want to say things that would cause that to happen. And I just wanted to remind you of that. But there's one other thing I want to say to you. And I know, that you get, you have a tendency to get worked up, okay? That's just your nature, best I can tell. Please, during this trial, as co-counsel, work with your team. Uh, if the Commonwealth presents a witness and they say something you don't like, don't mutter and stomp and . . . in front of the jury. Because the thing that you don't want to do is make the twelve that we seat in here, you don't wanna make 'em mad at you. Because that doesn't benefit you. So I just wanted to say that to you. The Commonwealth's gonna present a case against you. That's the adversarial system. You're gonna defend yourself. And then we're gonna let twelve people decide the case. Okay? All right. Very good then. Okay. You can go ahead and let the jury come on in now, then.

The trial court issued instructions on four counts based on the grand jury indictment. It also provided two separate instructions on the requirement of a unanimous verdict. The jury found the Appellant guilty and sentenced him as follows: possession of anhydrous ammonia with intent to manufacture methamphetamine (15

years); first-degree possession of a controlled substance (5 years); and manufacturing methamphetamine (15 years). In addition to these three charges, to be served concurrently, Appellant was found guilty of the fourth charge, use of drug paraphernalia, and was sentenced to 12 months.

In the consolidated direct appeal,[3] this court vacated the conviction for possession of a controlled substance on the basis of erroneous jury instructions implicating double jeopardy.[4] Following the direct appeal, Appellant filed his RCr 11.42 motion alleging as follows: (1) ineffective assistance of counsel when counsel failed to insure that requirements under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), were met regarding his hybrid representation; (2) ineffective assistance of counsel when defense counsel unreasonably stipulated to all scientific evidence and physical exhibits; and (3) ineffective assistance of counsel when defense counsel failed to object to jury instructions that denied Appellant a unanimous verdict resulting in a double jeopardy violation. The Calloway Circuit Court denied the RCr 11.42 motion and the motion for an evidentiary hearing. Appellant then appealed to this Court and added a fourth allegation: that the circuit court should have held an evidentiary hearing concerning the RCr 11.42 motion.

In that first appeal regarding the RCr 11.42 issues, this Court remanded the case solely on the *Faretta* issue. *Faretta* requires that when a defendant decides to proceed without counsel, he must be informed of the pitfalls of proceeding alone and that he must fully understand the nature of the waiver that he is electing. The Court stated as follows:

---

3. *Id.*

4. *Id.* at *9–10.

[o]n the face of the record before us, there is nothing to indicate that proceedings consistent with *Faretta* took place; consequently, we reverse and remand for an evidentiary hearing and further consideration regarding this claim.[5]

In a footnote, the Court further explained its concern:

> We note that it is not the Commonwealth's burden to cite to us in its appellate brief where we could find in the record proceedings consistent with *Faretta*. Often to rebut similar claims by an appellant in such cases, the Commonwealth does direct the Court to a citation in the record where the proceedings of which an appellant complains can be found. In this case, however, the Commonwealth has not guided us to a citation in the record that the *Faretta* requirements were satisfied. Consequently, there is nothing before the Court to satisfy us that the *Faretta* requirements were met.[6]

Upon remand, the lower court held an evidentiary hearing and found as follows:

> ...the hearing conducted on May 20, 2008 is the only hearing that could be considered to be a *Faretta* hearing, that the Court intended it to be a *Faretta* hearing, that the hearing did not comply with the requirements of *Faretta* and that there was no ineffective assistance of counsel, since a *Faretta* hearing, even if imperfect, was conducted.[7]

This appeal followed.

## II. *Standard of Review*

■ A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the dual prongs of "performance" and "prejudice" required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted in Kentucky in *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky.1985); *see also Parrish v. Commonwealth*, 272 S.W.3d 161 (Ky.2008).

The performance prong of *Strickland* requires that:

> Appellant must show that counsel's performance was deficient. This is done by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, or that counsel's representation fell below an objective standard of reasonableness.

*Parrish* at 168 (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064) (internal quotations and citations omitted). The U.S. Supreme Court and the Supreme Court of Kentucky have recognized that this is a very difficult standard to meet.

> Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Appellant is not guaranteed errorless counsel or counsel that can be judged ineffective only by hindsight, but rather counsel rendering reasonably effective assistance at the time of trial.

*Parrish* at 168 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065) (internal quotations and citations omitted).

---

**5.** *Stanfill v. Commonwealth*, 2013–CA–000721–MR, 2015 WL 1778065 (Ky.App. Apr. 17, 2015) at *2.

**6.** *Id.*, FN. 6.

**7.** *Commonwealth of Kentucky v. Stanfill*, Calloway Circuit Court Indictment No. 07–CR–00148, "Order Upon Evidenciary (sic) Hearing," entered August 13, 2015.

Addressing the prejudice prong of *Strickland*, the Kentucky Supreme Court stated that "Appellant must show that the deficient performance prejudiced the defense. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Parrish* at 169 (citing *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068) (internal quotations and citations omitted). **Both** prongs of *Strickland* must be met before relief under RCr 11.42 can be given. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

## III. *Discussion*

■ The first and most complex issue raised by Appellant is that of the alleged violation of the protection of *Faretta*, which requires the court to determine that the defendant's waiver of counsel is made "knowingly and intelligently" and to endeavor to assure that the defendant "knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525. The proceeding of May 20, 2008, was identified by the Calloway Circuit Court evidentiary hearing as a *Faretta* hearing. The circuit court acknowledged that it was highly irregular—so much so that the court declared it to be "imperfect."

■ We agree with the court's assessment. However, we are not convinced of the lower court's finding that the "hearing did not comply with the requirements of *Faretta*." The trial judge did not engage in the formula-based question-answer format set forth by *Hill v. Commonwealth*, 125 S.W.3d 221 (Ky.2004). However, that approach is no longer required. *Depp v. Commonwealth*, 278 S.W.3d 615 (Ky.2009), incorporated the holding of the United States Supreme Court in *Iowa v. Tovar*, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d

209 (2004), which declined to require that a precise formula or script be read to a defendant who decides to proceed without counsel. Instead, we must examine the record and do so pragmatically, asking "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance [counsel] could provide to an accused at that stage." *Depp* at 618 (citing *Tovar*, 541 U.S. at 89, 124 S.Ct. 1379).

Since the motion for hybrid representation was made for the sole purpose of the opening statement, we must disagree with the Appellant's contention that the *Faretta* hearing was equivalent to the meaningless exhortations noted with disfavor in *Commonwealth v. Terry*, 295 S.W.3d 819 (Ky. 2009). We also note the finding of the Calloway Circuit Court in its evidentiary hearing that the hearing "did not comply" with *Faretta*. However, the trial court advised Appellant that he was entitled to the hybrid representation, that he would be held to the same standard as an attorney for the opening statement, that he should be careful not to bring up matters that would not be admissible at trial, and that he should avoid creating a basis for a mistrial. The trial court expressed its hope that he had gone over this matter with Mr. Ernstberger. The court also advised Appellant to avoid his normal degree of excitability so that he would not run the risk of antagonizing the jury. These warnings were wholly suitable for a layman attempting an opening statement—particularly when coupled the additional warning that the court hoped that Appellant had discussed the matter with Mr. Ernstberger. In addition, Appellant is on record as actually referring to the *Faretta* decision in his pretrial hearing on April 14, 2008:

I would request that the court take another look at my appointment for coun-

sel ... and I would request that be done because I was because I was [*sic*] looking at *Faretta v. California*, where I see any mistakes I make are mine ... that is why I need counsel.

The record as a whole reflects the Appellant's competence in preparing his motions, made *pro se*, during pre-trial stages. It also reflects appellant's knowledge of the *Faretta* case itself. Thus, it is entirely possible to conclude that "[t]he trial court *implicitly* found the waiver to be done knowingly, intelligently, and voluntarily ... based on the sufficiently developed record." *Depp* at 619 (emphasis added).

While the merits of the "imperfect" *Faretta* hearing are certainly debatable, any alleged defects on this issue must be attributed to the trial court and not to ineffectiveness of counsel. The responsibility for the *Faretta* hearing belonged to the trial judge and not to Mr. Ernstberger, who properly acceded to the wishes of the Appellant and moved the court for hybrid representation—a motion which was then granted. Under *Strickland*, we cannot agree that this course of action constituted defective performance. It would be an unlikely and unreasonable scenario for counsel to be expected to object to the successful granting of a motion in his favor. Furthermore, since RCr 11.42 is a vehicle for addressing ineffective assistance of counsel and not for issues that should have been raised in a direct appeal, relief for. the *Faretta* issue is inappropriate. *See McQueen v. Commonwealth*, 948 S.W.2d 415 (Ky.1997).

■ The second issue raised by Appellant is that trial counsel was ineffective for stipulating to all scientific evidence and physical exhibits. The Commonwealth correctly notes that the Appellant at trial seemed to be attempting an "alternative perpetrator" defense, blaming "Tim Smith" for the presence of methamphet-

amine and attempting to illustrate that Appellant was unaware of it. Since the alternative perpetrator defense did not hinge upon scientific evidence, it is reasonable to believe that the stipulations were a matter of sound trial strategy. "Judicial scrutiny of counsel's performance must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The fact that this strategy proved ineffective in hindsight is not enough to show defective performance by counsel. "A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." *McGaha v. Commonwealth*, 469 S.W.3d 841, 846 (Ky. App.2015) (citing *McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky.1997)). We conclude that this argument does not satisfy the performance prong under *Strickland*, and we must, therefore, deny relief on this basis.

■ Finally, Appellant alleges ineffective counsel on the basis of defective jury instructions. He contends that there is an unaddressed unanimity and/or double jeopardy issue in Instruction No. 5–A regarding "Count 4. Manufacturing Methamphetamine." That instruction provides alternative theories upon which the jury could conceivably find guilt on the part of the defendant: whether he "knowingly manufactured methamphetamine" or whether he possessed two or more of the chemicals listed for use in making methamphetamine or two or more listed items of equipment used in making methamphetamine.

■ Appellant believes that this alternative instruction presents a unanimity problem based on *Johnson v. Common-*

*wealth*, 405 S.W.3d 439, 449 (Ky.2013), which disallows "a general jury verdict based on an instruction including two or more separate instances of a criminal offense." However, what Instruction No. 5–A actually provides is for multiple **theories** for a single criminal act. *Dunlap v. Commonwealth*, 435 S.W.3d 537, 609 (Ky.2013), distinguishes the *Johnson* holding as follows: "We held that this instruction did not create a unanimity error because both theories ... were supported by the evidence and resulted in the same crime." *Dunlap* governs the case before us because there was a single crime for which Appellant was charged, manufacturing methamphetamine, with an instruction providing multiple theories on how to arrive at a verdict. In addition, there are actually two separate instructions to the jury requiring unanimity—presumably for the guilt and the sentencing phases. Without an indication in the record that a unanimity problem actually existed, there is nothing to justify an assumption that the jury ignored those instructions.

▆ We next address the argument that the jury instructions were defective on double jeopardy grounds. Appellant argues that the instruction charging him with Possession of Anhydrous Ammonia with Intent to Manufacture Methamphetamine potentially duplicates elements of the Manufacturing Methamphetamine instruction. Appellant correctly concedes that this contention fails the *Blockburger*[8] test that requires that a different element must exist in order to avoid a violation of the due process guarantee against double jeopardy. Possession of Anhydrous Ammonia contains the element of being in an "unapproved container" while Manufacturing Methamphetamine contains the distinguishing element of requiring one other precursor chemical. Appellant argues that

a double jeopardy violation could nonetheless still be implicated under KRS 505.020(1)(c) for "continuous course of conduct." However the Commonwealth in turn argues that there was overwhelming evidence to convict based on all three of the Manufacturing Methamphetamine theories. If anhydrous ammonia had been removed from the list of chemicals, any two of the remaining five chemicals in the instruction—as well as the equipment evidence—would have supported the conviction.

The current state of the law regarding manufacturing methamphetamine and possession of a methamphetamine precursor tends to support the substance of Appellant's position on double jeopardy. *Shemwell v. Commonwealth*, 294 S.W.3d 430, 434 (Ky.2009), held that convictions for manufacturing methamphetamine and possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine do not violate double jeopardy under either a *Blockburger* or KRS 505.020 "continuing course of conduct" analysis. However, a relatively recent case, *Sevier v. Commonwealth*, 434 S.W.3d 443 (Ky.2014), distinguished *Shemwell*, holding as follows;

> the possession of a methamphetamine precursor is a lesser-included offense of manufacturing methamphetamine; and, therefore, conviction for both crimes, regardless of which specific chemicals or items of equipment may underlie each crime, violates double jeopardy.

*Sevier* at 452–53.

Within the context of an RCr 11.42 motion, however, we are limited to the issue of whether there was ineffective assistance of counsel under the two prongs of *Strickland*. Appellant's trial took place in 2008, one year before *Shemwell*, and *Sevier* did

8. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

not become law for another five years. Counsel cannot be held ineffective for failing to object to instructions based on future developments in the law. *See Commonwealth v. Davis,* 14 S.W.3d 9, 13 (Ky. 1999)(as modified Jan. 20, 2000).

We affirm the March 18, 2013, Order of the Calloway Circuit Court denying Appellant's motion for relief pursuant to RCr 11.42.

ALL CONCUR.

S.S., Appellant

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2015–CA–001368–MR**

Court of Appeals of Kentucky.

NOVEMBER 18, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court April 19, 2017